# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HEATHER KINTZ, | : | Civil No. 4:16-CV-02313 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| SMNRC, L.P., t/d/b/a | : | |
| HOMETOWN NURSING AND | : | |
| REHABILITATION CENTER, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

## I. INTRODUCTION

Pending before the court is the defendant's motion for summary judgment (Doc. 31). The plaintiff, Heather Kintz, brought the instant suit against her former employer, alleging violations of her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111, *et seq.* Kintz contends that she was entitled to FMLA leave, which the defendant denied, and that the defendant subsequently retaliated against her by terminating her employment. Kintz further argues that the defendant discriminated against her because of her disability, and that she was denied a reasonable accommodation in violation of the ADA.

The defendant disputes these claims, and argues that Kintz had exhausted all of her FMLA leave. Further, the defendant claims that Kintz's request for an accommodation was unreasonable and unduly burdensome, and thus the defendant was not required to provide her with the requested accommodation. The defendant also asserts that it terminated Kintz's employment because she could not perform her job duties, and because she had exhausted her leave.

After a review of the record, we find that the defendant is entitled to summary judgment on the plaintiff's FMLA interference claim. However, there are genuine issues of material fact which preclude the entry of summary judgment with respect to the plaintiff's ADA claims discrimination and retaliation claims, as well as her FMLA retaliation claim.

## II.  BACKGROUND

Heather Kintz worked for the defendant as a residential care attendant and a certified nurse's aide ("CNA") from 1999 until 2005, and was rehired in 2006 as a CNA. (Doc. 32-1, ¶¶ 4-5). Beginning in October 2014, Kintz was forced to take leave on several occasions for medical issues that she was having.[1] In October 2014, Kintz took five days of leave for vocal cord polyps. (Id., ¶¶ 6-7). Then, on December 22, Kintz took approximately twenty-eight days of leave to have surgery

---

[1] The question of whether this initial leave constituted FMLA leave, or if the plaintiff was on a general medical leave, is fiercely contested, as it is alleged that the defendant had several leave policies for its employees. (Doc. 35-1, at 7 & n.3). This dispute is not material, however, to our resolution of this motion.

after she slammed her finger in the trunk of her car. (Id., ¶¶ 9-10). Kintz stated that she is unsure of the exact date that she returned to work, but it may have been January 30, 2015. (Doc 35, ¶ 10). Finally, on April 24, 2015, Kintz requested, and was granted, six weeks of FMLA leave beginning on April 28 in order to have a hysterectomy. (Doc. 32-1, ¶¶ 12-13). Notably, this period of leave is the only period in which Kintz filled out FMLA-specific paperwork provided by the defendant. (Doc. 32-4, at 10-11). After receiving a note from Kintz's doctor about her follow up appointment, the defendant extended the initial six weeks of leave through June 27, 2015, although whether this extension qualified as FMLA leave, and whether the doctor actually requested the extension, is in dispute. (Doc. 32-1, ¶ 15; Doc 35, ¶ 14).[2] It is undisputed that Kintz returned to work on June 21. (Doc. 32-1, ¶ 18).

Within five days of her return to work, on June 26, 2015, Kintz was experiencing pain from her surgery while she was at work, and she left work to see

---

[2] The defendant received a note from the plaintiff's doctor on May 29, 2015, advising the defendant that Kintz's return-to-work status was going to be evaluated at her next appointment, which was June 19, 2015. (Doc. 32-5, at 2). On June 1, Jennifer Zimmerman sent the plaintiff a letter, advising her that her FMLA leave had been extended until June 27, and that her FMLA leave would be exhausted at that time. (Doc. 32-5, at 3). It appears that the defendant automatically understood the doctor's note to be a request for more leave, and granted the plaintiff additional leave. While there is nothing in the record before us that shows that Kintz actually requested an extension of her FMLA leave, the plaintiff's doctor did send a note to the defendant that Kintz could return to work on June 17. (Doc. 32-5, at 5). Thus, it would appear that Kintz took extra leave from June 9 to June 17.

her doctor. (Doc. 32-1, ¶ 22). Her doctor gave her a note, which stated that Kintz was to be put on "light duty until further notice." (Doc. 32-1, ¶ 23). Kintz gave the note to her supervisor's subordinate on June 29. (Doc. 32-1, ¶ 24). Several days later, Kintz received a letter from Jennifer Zimmerman, the Nursing Home Administrator, dated July 1, which advised Kintz that her FMLA leave had been exhausted on June 30, and that her employment had been terminated. (Doc. 32-5, at 9).

This correspondence from Zimmerman terminating Kintz had a certain enigmatic quality to it. The letter seems to assume, rather than state, that Kintz is being fired, and provides her with information concerning re-hire procedures and termination of health benefits. (Id.) Further, the only explanation given by Zimmerman for releasing Kintz is explicitly linked to her use of her FMLA leave. Thus, the letter implies that Kintz's employment was terminated because: "Your twelve weeks of Medical Leave of Absence will be exhausted on June 3l, 2015. In accordance with the FMLA guidelines you are only eligible for 12 weeks of leave, which you have taken." (Id.) The ambiguities in this letter are heightened by the fact that what transpired between Kintz and Zimmerman between June 29 and July 1 is the subject to two very different and starkly contrasting factual narratives. In her deposition, Jennifer Zimmerman stated that, after she was given the "light duty" note from Kintz's doctor, she advised Kintz to get clarification from her

doctor regarding the restrictions she had, and further, that she gave Kintz FMLA paperwork to fill out to extend her time-off. (Doc. 35-5, at 15-16). Zimmerman claimed that, after advising Kintz of these steps, she attempted to get ahold of Kintz for several days thereafter, and that Kintz never responded or made any effort to get in touch with her. (Doc. 35-5, at 17). This is in stark contrast to Kintz's testimony, in which she states that she was never given FMLA paperwork, but instead was informed she could not be accommodated with light duty and to file for unemployment. (Doc. 35-4, at 32.)

Kintz filed a written complaint with the Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the Pennsylvania Human Relations Commission ("PHRC"), on February 5, 2016. (Doc. 35-4, at 165). She alleged that the defendant wrongfully terminated her employment after refusing her request for a reasonable accommodation. (Id., at 166). She further alleged that the defendant's reason for her termination—exhaustion of her FMLA leave—was incorrect, as she had not yet exhausted her FMLA leave, and the only thing preventing her from working was the defendant. (Id.)

Within ninety days after receiving her right-to-sue letter from the EEOC, Kintz filed this action with the district court on November 18, 2016. (Doc. 1). On May 14, 2018, fact discovery concluded. (Doc. 30). The defendant filed the instant

motion for summary judgment on May 25, 2018. (Doc. 31). The motion has been fully briefed (Docs. 32, 35-1) and is ripe for resolution.

### III.   <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In evaluating a motion for summary judgment, a court must determine "whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and whether the moving party is therefore entitled to judgment as a matter of law." <u>Macfarlan v. Ivy Hill SNF, LLC</u>, 675 F.3d 266, 271 (3d Cir. 2012) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)).  A disputed issue is only "genuine" if there is a sufficient evidentiary basis upon which a reasonable factfinder could find for the non-moving party. <u>Kaucher v. Cnty. of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  A factual dispute is "material" only if it could affect the outcome of the suit under the governing law. <u>Doe v. Luzerne Cnty.</u>, 660 F.3d 169, 175 (3d Cir. 2011) (citing <u>Gray v. York Papers, Inc.</u>, 957 F.2d 1070, 1078 (3d Cir. 1992)).  The Court is not tasked with resolving disputed issues of fact, but only with determining whether there exist any factual issues that must be tried. <u>Anderson</u>, 477 U.S. at 247-49.

In considering a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  Macfarlan, 675 F.3d at 271; Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 770 (3d Cir. 2009). Where there exist factual issues that cannot be resolved without a credibility determination, the court must credit the non-moving party's evidence over that presented by the moving party.  Liberty Lobby, 477 U.S. at 255.  However, if there is no factual issue presented, and if only one reasonable conclusion could arise from the record with respect to the potential outcome under the governing law, the court must award summary judgment in favor of the moving party.  Id. at 250.

The court must review the entire record, but in doing so must take care to "disregard all evidence favorable to the moving party that the jury is not required to believe."  Reeves v. Sanderson Plumbing Products, 530 U.S. 133, 150-51 (2000).  The task for the court is to examine "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  Liberty Lobby, 477 U.S. at 251-52.  In considering this evidence, we note that "a single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment."  Paladino v. Newsome, 885 F.3d 203, 209 n. 34 (3d Cir. 2018) (quoting Lupyan v. Corinthian Colleges, Inc., 761 F.3d 314, 320 (3d Cir. 2014)).  This principle of the rules

governing summary judgment holds true "even where . . . the information is self-serving." Id. (citing Lupyan, 761 F.3d at 321 n.2).

## IV.  DISCUSSION

In this case, the plaintiff brings two categories of claims against her employer. First, Kintz claims that SMNRC violated the FMLA by interfering with her rights to take leave to which she was entitled, and by retaliating against her for asserting her rights to take this leave. Second, Kintz alleges that SMNRC violated the ADA by discriminating against her due to her disability or her perceived disability, and by retaliating against her for requesting an accommodation. For the reasons set forth below, we conclude that SMNRC is entitled to summary judgment on the plaintiff's FMLA interference claim. However, there are genuine issues of material fact that preclude the entry of summary judgment with respect to the plaintiff's FMLA retaliation claim and ADA claims.

### A.  FMLA Claims

The plaintiff alleges that SMNRC violated the FMLA when it interfered with her right to take leave that she was entitled to, and when it subsequently retaliated against her by terminating her employment. SMNRC counters that Kintz's FMLA leave was exhausted, and thus there could be no interference because Kintz was not entitled to take any more leave. Further, SMNRC argues

that it had a legitimate, nondiscriminatory reason for terminating the plaintiff because she had exhausted her FMLA leave and could not be accommodated.

In order to state a claim for interference under the FMLA, a plaintiff must allege:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

Ross v. Gilhuly, 755 F.3d 185, 191-92 (3d Cir. 2014) (quoting Johnson v. Cmty. Coll. of Allegheny Cnty., 566 F.Supp.2d 405, 446 (W.D. Pa. 2008)). A plaintiff must thus show not only that she was entitled to FMLA leave, but that the employer denied her those benefits. Sommer v. The Vanguard Grp., 461 F.3d 397, 399 (3d Cir. 2006). The employee does not need to show that she was treated differently from other employees, and the employer cannot justify the denial of FMLA benefits by establishing a legitimate business purpose for its decision. Id. at 399. Moreover, "[b]ecause the FMLA [interference claim] is not about discrimination, a McDonnell Douglas burden-shifting analysis is not required." Id.

The Third Circuit Court of Appeals has emphasized that interference claims are not coterminous with claims of FMLA retaliation, and indeed has explained that "[a]n interference claim is not about discrimination[;] it is only about whether the employer provided the employee with the entitlements guaranteed by the

FMLA." <u>Ross</u>, 755 F.3d at 192 (quoting <u>Callison v. City of Phila.</u>, 430 F.3d 117, 120 (3d Cir. 2005)) (alteration in <u>Ross</u>). In plain terms, "for an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld." <u>Ross</u>, 755 F.3d at 192.

In order to state a claim for retaliation under the FMLA, an employee must allege that after taking FMLA-qualifying leave, she was subjected to adverse employment action, including termination other retaliatory action, because she took time away from work for FMLA-qualifying reasons. <u>See, e.g.</u>, <u>Freeman v. Phila. Hous. Auth.</u>, No. 12-1422, 2013 WL 3761274, at *22, 2013 U.S. Dist. LEXIS 100774, at *31 (E.D. Pa. July 18, 2018) (describing retaliation claims as those "where an employee requested or took FMLA leave, remained at or returned to work, and then was subject to some type of adverse employment action such as termination or demotion.").

To prevail on her FMLA retaliation claim, the plaintiff has the burden of establishing a *prima facie* case by showing that she invoked a right to FMLA-qualifying leave, subsequently suffered an adverse employment decision, and demonstrate that the adverse action was causally related to her invocation of her FMLA rights. <u>Ross</u>, 755 F.3d at 193 (citing <u>Lichtenstein v. Univ. of Pittsburgh Med. Ctr.</u>, 691 F.3d 294, 302 (3d Cir. 2012)). If the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to show a legitimate,

non-retaliatory reason for the allegedly adverse employment decision. Lichtenstein, 691 F.3d at 302. If the employer satisfies this "minimal burden," id., the plaintiff has the burden of establishing evidence sufficient to cast doubt on the employer's legitimate, non-retaliatory reason. Id.

### 1. Kintz's FMLA Interference Claim Fails as a Matter of Law But Disputed Issues of Fact Preclude Summary Judgement on Her FMLA Retaliation Claim

In the instant case, there is no dispute that Kintz was an "eligible employee," and that SMNRC is an employer subject to the FMLA. However, even assuming that Kintz was entitled to FMLA leave, which is fiercely disputed, the record is devoid of any evidence showing that Kintz was ever denied leave. Nor is there any showing that Kintz ever requested FMLA leave, or any leave at all, for the time period after June 26, 2015. The record shows that Kintz returned to work on June 21, after she had taken FMLA leave for her hysterectomy. On June 26, Kintz was experiencing pain and went to her doctor, who requested that she be put on light duty at work.  There is no mention in the plaintiff's complaint or in her brief that she ever advised SMNRC of her intent to take more time off, or that she needed more leave. She simply requested an accommodation of light duty. This is fatal to Kintz's interference claim, as Ross requires a plaintiff to give notice to her employer of her intent or need to take the FMLA leave that he or she is entitled to. The only notice given to SMNRC was the request for light duty, not for FMLA

leave or any other time-off. Since this light duty request falls short of a notice or request for FMLA leave, we find that Kintz's FMLA interference claim fails as a matter of law.

In contrast, while it presents a close question, we find that Kintz's FMLA retaliation survives summary judgment. In our view, unlike an interference claim, a retaliation claim is not dependent upon the denial or interference with the plaintiff's on-going efforts to utilize FMLA leave. Instead, the gist of a retaliation claim is that the defendant has taken some adverse action against an employee because of her past use of FMLA leave. Thus, "[t]o prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 301–02 (3d Cir. 2012). Here, it is uncontested that in April 2015, Kintz invoked her right to FMLA leave and used that leave through June 21, 2015. Likewise, there is no dispute that Kintz suffered an adverse action shortly after she used this leave, when she was fired on July 1, 2015. Thus, the first two elements of an FMLA retaliation claim are fully met here. All that remains is the question of causation, a question which often turns on issues of human motivation. Because questions of motivation, and causation, are often incapable of direct proof, the courts have spoken to the nature and quality of the

circumstantial evidence needed to create a genuine issue of fact regarding causation. On this score, it is well-settled that:

> To demonstrate a prima facie case of causation, [a plaintiff] must point to evidence sufficient to create an inference that a causative link exists between her FMLA leave and her termination. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279–81 (3d Cir.2000). When the "temporal proximity" between the protected activity and adverse action is "unduly suggestive," this "is sufficient standing alone to create an inference of causality and defeat summary judgment." LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir.2007). "Where the temporal proximity is not 'unusually suggestive,' we ask whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference.' " Id. (quoting Farrell, 206 F.3d at 280).

Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 307 (3d Cir. 2012).

Put another way:

> To demonstrate a causal connection, a plaintiff generally must show "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir.2007). Employers "cannot use the taking of FMLA leave as a negative factor in employment actions." 29 C.F.R. § 825.220(c).

Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 258 (3d Cir. 2014).

In this case, we believe that the evidence would permit, but not compel, an inference of causation. Therefore, this evidence, viewed in a light most favorable to Kintz, describes disputed issues of fact which may not be resolved as a matter of law but must be tested at trial as a matter of fact. In particular, we conclude that the temporal proximity of these events, coupled with SMNRC's decision in its July 1,

2015 termination letter to link Kintz's discharge to her past FMLA leave usage, would permit an inference of causation. Kintz argues that SMNRC retaliated against her for taking the FMLA leave that was approved from April 28, 2015, until June 21, 2015. Kintz was then fired 9 days later, following a brief interactive process which is the subject of mutually contradictory descriptions by Kintz and her supervisor Zimmerman. This is a suggestively close chronology of events in our view, but the circumstantial evidence which permits an inference of causation is not limited to this temporal proximity alone. When SMNRC fired Kintz, the termination letter issued by the defendant can be read to do what the law forbids, in that it can be seen as describing " 'the taking of FMLA leave as a negative factor in employment actions.' 29 C.F.R. § 825.220(c)." Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 258 (3d Cir. 2014). In fact, the only explanation given by Zimmerman for releasing Kintz in this July 1, 2015 letter was her use of her FMLA leave. Thus, the letter implies that Kintz's employment was terminated because: "Your twelve weeks of Medical Leave of Absence will be exhausted on June 30, 2015. In accordance with the FMLA guidelines you are only eligible for 12 weeks of leave, which you have taken." (Doc. 32-5.)

Taken together, this circumstantial evidence satisfied Kintz's *prima facie* burden of showing that there are disputed factual issues regarding the causation element of this FMLA retaliation claim. While SMNRC can overcome this *prima*

*facie* case by showing that the undisputed evidence reveals a non-discriminatory reason for its actions, in a case such as this where a plaintiff is bringing parallel ADA and FMLA retaliation claims, courts often rely upon the same analysis to assess the question of whether the defendant has shown a non-discriminatory basis for an adverse action under either statute. See  Reyer v. Saint Francis Country House, 243 F. Supp. 3d 573, 594 n. 16 (E.D. Pa. 2017).  In this case, as discussed below, the evidence is in conflict regarding whether there was a non-discriminatory basis of the decision to fire Kintz. See pages 20-24, infra. Given this factual conflict, which turns on the credibility of the competing accounts provided by Kintz and Zimmerman, summary judgment simply is not appropriate on this claim.

**B**. **ADA Claims**

Kintz also brings two claims against the defendant under the ADA. First, Kintz claims that SMNRC discriminated against her on the basis of a disability or a perceived disability. Additionally, Kintz brings a retaliation claim, alleging that she was terminated after she requested a reasonable accommodation of light duty. In support of its motion, SMNRC does not challenge the plaintiff's claimed disability, but rather posits that it had a legitimate, nondiscriminatory reason for terminating Kintz's employment—her FMLA leave was exhausted. (Doc. 32, at 11). SMNRC claims that the reason was not a pretext for discrimination, as it had given

accommodations to other employees who were injured. (Id.) Further, SMNRC argues that Kintz's requested accommodation of light duty was unreasonable and unduly burdensome. (Id., at 12-13). We conclude that there genuine issues of material fact that preclude us from granting summary judgment on these claims. Therefore, we will deny the motion for summary judgment with respect to the plaintiff's ADA claims.

### 1. The Legal Standard for ADA Discrimination and Retaliation Claims

The purpose of the ADA is to "prevent employment discrimination of qualified individuals on account of their disability." Koller v. Riley Riper Hollin & Colagreco, 850 F. Supp. 2d 502, 512 (E.D. Pa. 2012) (citing 42 U.S.C. § 12112(a)). The Act requires employers to make "reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability, unless the employer demonstrates that such accommodations would impose an undue hardship in the operation of their business." Id. (quoting Fleck v. WILMAC, Corp., No. 10-5562, 2011 U.S. Dist. LEXIS 54039, at *10 (E.D. Pa. May 19, 2011)).

In order to make out a *prima facie* claim for workplace discrimination under the ADA, a plaintiff must demonstrate that she is (1) disabled within the meaning of the ADA, (2) is otherwise qualified to perform the essential functions of the job,

with or without reasonable accommodations by the employer, and (3) has suffered an adverse employment decision as a result of the discrimination. Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 185 (3d Cir. 2010); see also Stadtmiller v. UPMC Health Plan, Inc., 491 F. App'x 334, 336 (3d Cir. 2012); Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 580 (3d Cir. 1998). A disability can take the form of a physical or mental impairment that substantially limits one or more major life activities, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(1).

If the plaintiff makes a *prima facie* showing under this three-part standard, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action. See Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000) (noting that the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to ADA disparate treatment and retaliation claims). If a legitimate, nondiscriminatory reason is given, then the plaintiff must present evidence to demonstrate that the defendant's reasons were pretext for its unlawful action. Id. The plaintiff may meet this burden by identifying evidence that allows a factfinder either to disbelieve the employer's articulated legitimate justification, or to conclude that an invidious discriminatory reason was more likely than not a "but for" cause of the

employment action.  Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). This "but for" standard of causation sets an exacting benchmark for these claim.

The ADA also prohibits employers from retaliating against employees who oppose an act or practice made unlawful by the ADA or because the employee has made a charge under the ADA.  42 U.S.C. § 12203(a); Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 188 (3d Cir. 2003) ("it is unlawful for an employer to retaliate against an employee based upon the employee's opposition to anything that is unlawful under the ADA.").  Although requesting a reasonable accommodation does not appear to "fit[ ] within the literal language of the statute," Soileua v. Guilford of Maine, Inc., 105 F.3d 12, 16 (1st Cir. 1997), the Court of Appeals for the Third Circuit has held that making a good-faith request for an accommodation is protected activity for purposes of the ADA's anti-retaliation provision.  Shellenberger, 318 F.3d at 191.

In order to make out a *prima facie* case of illegal retaliation under the ADA, a plaintiff must show (1) protected employee activity, (2) adverse action by the employer either after or contemporaneous with the employee's protected activity, and (3) a causal relationship between the protected activity and the adverse action. Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 759 (3d Cir. 2004); Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567-68 (3d Cir. 2002).  The same McDonnell Douglas burden-shifting framework described above with respect

to ADA discrimination claims also applies to ADA retaliation claims. In all cases involving retaliation, a plaintiff must prove that retaliatory animus played a role in the employer's decision-making process and that it had a determinative effect on the outcome of the process. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 501 (3d Cir. 1997). That burden always remains with the plaintiff. Id.

The Third Circuit has summarized the showing that a defendant must make in order to obtain summary judgment on a claim of ADA retaliation:

> [T]he employer must show that the trier of fact could not conclude, as a matter of law, (1) that retaliatory animus played a role in the decisionmaking process and (2) that it had a determinative effect on the outcome of that process. This may be accomplished by establishing the plaintiff's inability to raise a genuine issue of material fact as to either: (1) one or more elements of the plaintiff's prima facie case or, (2) if the employer offers a legitimate non-retaliatory reason for the adverse employment action, whether the employer's proffered explanation was a pretext for retaliation.

### 2. The Defendant is not Entitled to Summary Judgment on Kintz's ADA Claims

Turning to the facts of this case, we find that there are genuine issues of material fact that preclude the entry of summary judgment on Kintz's ADA claims.

Kintz alleges that she was terminated from Hometown Nursing and Rehabilitation Center because of a disability, or a perceived disability. We note at the outset that Kintz has not pleaded a precise disability from which she suffered.

However, Kintz also claims that she was discriminated against because her employer perceived her as having a disability. (Doc. 1, ¶ 35).

This court has stated that a plaintiff's "regarded as disabled" claim focuses on the "reactions and perceptions of the persons interacting or working with him," rather than the plaintiff's own abilities. Yanoski v. Silgan White Cap Americas, LLC, 179 F.Supp.3d 413, 428 (M.D. Pa. 2016) (quoting Kelly v. Drexel Univ., 94 F.3d 102, 108-09 (3d Cir. 1996)). More recently, the United States District Court for the Western District of Pennsylvania succinctly stated the standard for analyzing a "regarded as disabled" claim:

> "Because the ADA 'requires the court to determine whether the plaintiff was "subjected to an action prohibited" by the ADA "because of an actual or perceived impairment," most courts have concluded that causation is an integral part of the threshold finding that a plaintiff is regarded as having a disability." Tirk v. Dubrook, Inc., Civ. No. 14-889, 2016 WL 427738, at *4 (W.D. Pa. Feb. 4, 2016) (citing Baughman v. Cheung Enters., LLC, No. 13-1511, 2014 WL 4437545, at *12 (M.D. Pa. Sep. 9, 2014)). "The weight of temporal evidence is context-specific and 'must be considered with a careful eye to the specific facts and circumstances encountered." Proudfoot v. Arnold Logistics, LLC., 59 F.Supp.3d 697, 708 (M.D. Pa. 2014) (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000)). Temporal proximity is measured between the time the employer learned of the alleged "disability" and when the adverse employment action occurred. Warshaw v. Concentra Health Services, 719 F.Supp.2d 484, 496 (E.D. Pa. 2014). "Courts that have relied on a temporal link to overcome summary judgment have typically required an extremely short time period or the existence of additional circumstantial facts to support causation." Tirk, 2016 WL 427738, at *4 (citations omitted).

Schirnhofer v. Premier Comp. Solutions, LLC, 303 F.Supp.3d 353 (W.D. Pa. 2018).

The court's analysis in Schirnhofer is instructive. Here, Kintz effectively requested an accommodation consisting of light duty when she gave her doctor's note to her supervisor on June 29; the note stated that Kintz was to be placed on light duty until further notice. (Doc. 32-5, at 8). Kintz received a letter dated July 1, just two days later, which stated her employment was being terminated. (Doc. 32-5, at 9). A reasonable factfinder could conclude that SMNRC regarded Kintz as being disabled because of the light duty her doctor requested and her prior medical history. Furthermore, there is no question that the temporal proximity between the requested accommodation and the plaintiff's termination—two days—at the very least raises a genuine dispute of material fact as to the defendant's motive for Kintz's termination. On this score, a reasonable factfinder could conclude that the defendant in fact regarded Kintz as disabled.

Assuming the plaintiff can show she was regarded as being disabled, she adequately states a *prima facie* case of discrimination; she claims that she was qualified to perform the essential functions of her job with or without an accommodation, as she could have performed light duty, and that she was subject to adverse action by way of her termination. The defendant claims that its reason for Kintz's termination—that she exhausted her FMLA leave—is a legitimate

nondiscriminatory reason, and that Kintz adduces no evidence that this reason is a pretext for discrimination. However, in addition to the temporal proximity of the accommodation and Kintz's termination, the record is filled with factual disputes regarding the circumstances surrounding Kintz's termination, from which a factfinder could reasonably conclude that SMNRC's reason was a pretext for discrimination.

In her deposition, Jennifer Zimmerman stated that, after she was given the "light duty" note from Kintz's doctor, she advised Kintz to get clarification from her doctor regarding the restrictions she had, and further, that she gave Kintz FMLA paperwork to fill out to extend her time-off. (Doc. 35-5, at 15-16). Zimmerman claimed that, after advising Kintz of these steps, she attempted to get ahold of Kintz for several days thereafter, and that Kintz never responded or made any effort to get in touch with her. (Doc. 35-5, at 17). This is in stark contrast to Kintz's testimony, in which she states that she was never given the aforementioned FMLA paperwork, but instead was informed she could not be accommodated with light duty and to file for unemployment. (Doc. 35-4, at 32). Additionally, it is worth noting that the letter of termination was dated just two days after Kintz gave notice of her need for light duty, even though Zimmerman testified that she gave Kintz time to speak with her doctor.

Given that the circumstances surrounding Kintz's termination are almost entirely in dispute, we conclude that an entry of summary judgment would be inappropriate, as these disputes raise genuine issues of material fact concerning Kintz's ADA discrimination claim. These disputes rest primarily on the credibility of both Kintz and Zimmerman, which is not a determination for this court to make.

Nor would it be appropriate to enter summary judgment on Kintz's retaliation claim under the ADA. At the outset, we note that Kintz has made a *prima facie* showing of retaliation; she has stated that she engaged in protected activity, *i.e.*, requesting an accommodation, that she was subject to adverse action when she was terminated two days later, and that her termination was caused by her request for an accommodation. Again, the defendant posits that it had a legitimate, nondiscriminatory reason for terminating Kintz because her FMLA leave was exhausted. SMNRC additionally claims that Kintz's requested accommodation was unreasonable and unduly burdensome.

As we have already discussed, Kintz has presented evidence from which a factfinder can conclude that SMNRC's proffered reason for her termination—FMLA exhaustion—was a pretext for discrimination. Additionally, there are a number of factual disputes surrounding Kintz's request for an accommodation that preclude the entry of summary judgment. Zimmerman was asked in her deposition

if there were light duty assignments offered to employees, specifically CNAs, who were injured on the job, to which she replied:

> Well, we would look to see if -- what we can do for them. We would -- we can modify their job. Some of the employees would assist with helping the residents with nail care. They would assist with passing water. They would assist with answering call lights. They would assist with making beds. They would mainly assist with those kinds of resident care issues.

(Doc. 35-5, at 8). Plaintiff's counsel then asked Zimmerman if there were other jobs that CNAs were able to perform that did not involve heavy lifting, and Zimmerman responded that there were. (Id.) Additionally, Zimmerman stated that these modifications were available to employees who were injured both on the job and off the job. (Id., at 9). Despite this testimony, Kintz testified that she was never offered light duty, and was told instead that she could not be accommodated. (Doc. 35-4, at 32).

Zimmerman's testimony completely contradicts Kintz's testimony in this regard, which in turn creates a dispute concerning the interactive process that an employer is obliged to engage in when faced with a request for an accommodation. The Court of Appeals for the Third Circuit has elaborated on the importance of both the employee and the employer engaging in this interactive process in order to come to an effective resolution concerning an employee's need for an accommodation:

The ADA's regulations make clear that the purpose of the interactive process is to determine the appropriate accommodations: "This process should identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(*o*)(3). Therefore, it would make little sense to insist that the employee must have arrived at the end product of the interactive process before the employer has a duty to participate in that process. The EEOC's interpretive guidelines squarely place some of the burden on the employer by stating that "the employer must make a reasonable effort to determine the appropriate accommodation." 29 C.F.R. Pt. 1630, App. § 1630.9 at 359.

As we explained in <u>Mengine</u> [v. Runyon, 114 F.3d 415 (3d Cir. 1997)], the process must be interactive because each party holds information the other does not have or cannot easily obtain. We noted that "employers will not always know what kind of work the worker with the disability can do, and conversely, the worker may not be aware of the range of available employment opportunities, especially in a large company. Thus, the interactive process may often lead to the identification of a suitable position." <u>Mengine</u>, 114 F.3d at 420.

<u>Taylor v. Phoenixville School District</u>, 184 F.3d 296, 316 (3d Cir. 1999).

The differences between Zimmerman's and Kintz's testimony are significant. According to Zimmerman, the defendant attempted to engage in the process by getting more information from Kintz's doctor and by repeatedly attempting to contact her. However, according to Kintz, there was no process whatsoever, Zimmerman never tried to reach out to her, and her employment was terminated before she was given a chance to engage in any such process.

Not only does this conflicting testimony create a genuine issue of material fact as to the interactive process, or lack thereof, but it also severely undermines the defendant's argument that Kintz's request for light duty was unreasonable and

unduly burdensome. The defendant argues that Kintz was unable to perform fifty percent of her job duties, and that accommodating her would require hiring a second person to work on her shift to cover those duties. (Doc. 32, at 13). Zimmerman's testimony, however, demonstrates that other employees, specifically CNAs such as Kintz, were given light duty assignments similar to what Kintz requested when they were injured. She testified that CNAs could help with nail care, making beds, and answering call buttons, among other light duty jobs. (Doc. 35-5, at 8). Given this testimony, the defendant cannot defeat Kintz's retaliation claim by claiming her accommodation request was unreasonable as a matter of law. To the contrary, Zimmerman's testimony demonstrates that Kintz's request for light work was in line with the light duty given to other injured employees. Therefore, the reasonableness of this accommodation request presents a question of fact for trial and we conclude that the defendant is not entitled to summary judgment on Kintz's ADA retaliation claim.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, we conclude that the defendant is entitled to summary judgment on the plaintiff's FMLA interference claims. However, there are genuine issues of material fact regarding the plaintiff's ADA discrimination and retaliation claims, as well as the plaintiff's FMLA retaliation claim, which preclude the entry of summary judgment on those claims. Therefore, we will grant

the motion for summary judgment as to the FMLA interference claim, but deny the motion as to the ADA claims, and the FMLA retaliation claim.

An appropriate order follows.

DATED: October 24, 2018